**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION**

UNITED STATES OF AMERICA                                                                              PLAINTIFF

v.                                          No. 4:13CR00010 JLH

JERMAINE LAMON ROY                                                     DEFENDANT

**OPINION AND ORDER**

Jermaine Lamon Roy was convicted of violating 18 U.S.C. § 1591(a)(1), which makes it a crime knowingly to recruit, entice, harbor, transport, provide, obtain, or maintain another person in knowing or reckless disregard of the fact that means of force, threats of force, fraud, or coercion would be used to cause that person to engage in a commercial sex act, provided that the offense was in or affecting interstate commerce. Roy's victim was Lakisha Smith. The timeframe charged in the superseding indictment was from in or about November 2011 to in or about December 2012. It was undisputed that Smith was working as a prostitute during this period of time, and the evidence was overwhelming that Roy was her pimp. There was also substantial evidence that Roy inflicted physical violence on Smith. Several witnesses, including Smith, testified regarding instances in which Roy inflicted physical violence on her. The theory of the defense was that Roy and Smith were in a romantic relationship, and that the altercations indicated that there were problems in their romantic relationship rather than that Roy was using force to cause Smith to engage in commercial sex acts. *See* Document #65 at 6; Tr. 54; Tr. 761-62.

Roy has now moved for a new trial pursuant to Federal Rule of Criminal Procedure 33. Rule 33(a) provides that "the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). Roy does not contend that the evidence was insufficient to

convict him. Rather, he contends, first, that the Court erred in certain evidentiary rulings and, second, that the prosecutors engaged in misconduct.

## I. EVIDENTIARY RULINGS

**A.	Rule 412**

Before trial, the government moved *in limine* pursuant to Federal Rule of Evidence 412 to exclude evidence of Smith's sexual behavior. Rule 412(a) provides that evidence is not admissible in a civil or criminal proceeding involving alleged sexual misconduct to prove that the victim engaged in other sexual behavior or to prove a victim's sexual predisposition. Fed. R. Evid. 412(a). Rule 412(b) provides the following exceptions:

> (1) *Criminal cases.* The court may admit the following evidence in a criminal case:
>
> (A) evidence of specific instances of a victim's sexual behavior, if offered to prove that someone other than defendant was the source of semen, injury, or other physical evidence;
>
> (B) evidence of specific instances of a victim's sexual behavior with respect to the person accused of the sexual misconduct, if offered by the defendant to prove consent or if offered by the prosecutor; and
>
> (C) evidence whose exclusion would violate the defendant's constitutional rights.

Fed. R. Evid. 412(b)(1).[1] Rule 412 further provides that if a party intends to offer evidence under Rule 412(b), the party must file a motion that specifically describes the evidence and states the purpose for which it is offered, and the party must do so at least fourteen days before the trial unless the court, for good cause, sets a different time, and the party must serve the motion on all the parties

---

[1] The only provision of Rule 412(b)(1) at issue is subsection (C). Roy argued that the exclusion of evidence that he proffered violated his constitutional rights.

as well as the victim. Fed. R. Evid. 412(c)(1). In addition, "[b]efore admitting evidence under this rule, the court must conduct an in camera hearing and give the victim and parties a right to attend and be heard. Unless the court orders otherwise, the motion, related materials, and the record of the hearing must be and remain sealed." Fed. R. Evid. 412(c)(2).

In response to the government's motion *in limine*, the defense agreed "that evidence offered to prove that Lakisha Smith engaged in prostitution before or after the time period charged in the Superseding Indictment is generally inadmissible pursuant to Rule 412." Document #61 at 1. The only argument made by Roy at that time concerning evidence encompassed by Rule 412 was that he should be permitted to offer evidence of Smith's sexual behavior, including acts of prostitution, during the time charged in the indictment. The government agreed with that argument, and Roy was not prohibited from introducing evidence pertaining to Smith's sexual behavior and acts of prostitution during the time encompassed by the indictment. In addition, Roy argued that Rule 412 did not apply to evidence offered solely to establish his state of mind or to show that Smith had a motive to cooperate with the government. Document #61 at 2-6.

The Court granted the motion *in limine* for two reasons. First, Roy had not filed a motion fourteen days before trial as required by Rule 412(c). Second, apart from timeliness, exclusion of evidence of Smith's sexual misconduct outside of the period of time alleged in the indictment did not violate Roy's constitutional rights. The Court further ruled that if the defense had some basis for believing that Smith had a motive to testify against Roy based on the prospect of leniency from the prosecution, then that testimony would be admitted without identifying the specific crimes for which Smith might receive leniency based on her testimony.

3

Roy contends that the Court's ruling on the government's motion *in limine* was in error, but Roy is mistaken.

First, Roy never gave the kind of notice required by Rule 412(c). He never filed a motion specifically describing the evidence that he intended to offer, and he never gave notice to Smith of that evidence. Rule 412(c)(2) provides that before admitting evidence under the rule, the court must conduct an in camera hearing and give the victim, as well as the parties, a right to attend and be heard. Fed. R. Evid. 412(c)(2). Because Roy never gave notice to Smith, the Court could not give her an opportunity to attend a Rule 412 hearing and be heard. *Cf. United States v. Rouse*, 111 F.3d 561, 569 (8th Cir. 1997); *United States v. Eagle*, 137 F.3d 1011, 1015 (8th Cir. 1998); *United States v. Eagle Thunder*, 893 F.2d 950, 954 (8th Cir. 1990); *United States v. Provost*, 875 F.2d 172, 177 (8th Cir. 1989).

Nor did Roy establish good cause for failing to meet the fourteen-day requirement. Roy argues that the government identified Smith as the victim only seventeen days before trial while continuing to produce discovery thereafter. In response to the motion *in limine* Roy argued that the evidence should be admitted to show his state of mind, i.e., that, based on his knowledge of Smith's prior sexual activity, he did not know or act in reckless disregard of the fact that force, fraud, or coercion would be used to cause her to engage in commercial sex acts. Document #61 at 2-5. That argument presupposed that Roy was aware of Smith's prior sexual activity before the time encompassed by the indictment; but if he was aware of that evidence, there was no reason to delay filing the motion and giving the appropriate notice. *Cf*. Tr. 407. Notably, Roy did not request a continuance to enable him to comply with the fourteen-day requirement.

In his post-trial motions, Roy appears to have abandoned his argument that such evidence should have been admitted to show his state of mind. Indeed, he never proffered any evidence to show that he knew or believed that Smith had engaged in sexual misconduct before the time encompassed by the indictment. Roy now argues that such evidence was "relevant to [Smith's] state of mind in order for jurors to determine whether, in fact, she was a victim[.]" Document #88 at 7-8. Thus, Roy has gone from arguing that the evidence was relevant to show his state of mind to arguing that the evidence was relevant to show Smith's state of mind. Roy's present argument essentially is that he was entitled to introduce evidence of Smith's sexual behavior to show that she had a predisposition to engage in prostitution–which is precisely the kind of evidence that Rule 412 excludes.

Apart from Roy's failure to meet Rule 412(c)(1)'s fourteen-day requirement, the evidence was inadmissible. As the Court indicated during the trial, a case directly on point is *United States v. Cephus*, 684 F.3d 703 (7th Cir. 2012). Tr. 408. There, the Seventh Circuit explained:

> Rule 412(a)(1) of the federal evidence rules provides that in a case involving allegations of sexual misconduct, "evidence offered to prove that a victim engaged in other sexual behavior" is inadmissible. (The prostitutes working for Cephus were engaged in criminal activity, but they were also his victims.) If admissible, such evidence would deter many victims of sexual abuse from testifying, as mentioned in the Committee Note to 1994 Amendments to Rule 412. There are exceptions to the exclusion, but the only one argued by the defendants is "evidence whose exclusion would violate the defendant's constitutional rights," Fed. R. Evid. 412(b)(1)(C), namely a defendant's right to confront the witnesses against him. Specifically the defendants wanted to cross-examine one of the adult call girls in Cephus's stable (Cassandra by name) about her having worked as a prostitute before he recruited her. They wanted to suggest that having already been a prostitute she would not have been deceived by Cephus and therefore her testimony that she was coerced into working for him—an element of one of the charged offenses when the prostitute is not a minor, 18 U.S.C. § 1591(a)—should be disbelieved. But the testimony sought to be elicited by the cross-examination would have been irrelevant. Even if no promises were made to Cassandra, this would not be evidence that she consented to be beaten

5

> and to receive no share of the fees paid by the johns she serviced. And even if she knew going in, from her prior experience, that Cephus probably would beat her, it was still a crime for him to do so. And finally the fact that she'd been a prostitute before does not suggest that he didn't beat and threaten her—that was his *modus operandi* and there's no evidence that he would have made an exception for Cassandra.

*Cephus*, 684 F.3d at 708. The Court was and is convinced that the Seventh Circuit got it right. *See also United States v. Valenzuela*, 495 F. App'x 817, 819-20 (9th Cir. 2012); *United States v. Graham*, No. 12-CR-311, 2013 WL 321568, at *3-4 (W.D.N.Y. Jan. 28, 2013); *United States v. Shamsud-Din*, No. 10CR927, 2011 WL 5118840, at *2-3 (N.D. Ill. Oct. 27, 2011). Roy's "constitutional right to present a defense was not impaired, because that right does not extend to the introduction of irrelevant evidence." *Jackson v. Norris*, 651 F.3d 923, 926 (8th Cir. 2011).[2] Again, the evidence that Roy wanted to offer is precisely the kind of evidence that Rule 412 excludes, and its exclusion did not violate Roy's constitutional rights.

**B.     The Videotape**

During cross-examination of Smith, defense counsel asked whether she had ever spoken with a customer and arranged dates on her own. She denied doing so. Defense counsel then proposed to show a videotape of Smith and Roy engaged in a sex act. According to defense counsel, while they were engaged in the act, a customer called on Smith's cell phone and, against Roy's wishes, she answered. Defense counsel argued that these facts would give rise to the inference that Smith willingly engaged in prostitution. Tr. 514. The Court did not allow Roy's lawyers to show the

---

[2] Moreover, "[T]he right to present relevant testimony is not without limitation. The right 'may, in appropriate cases, bow to accommodate other legitimate interests in the criminal trial process.'" *Michigan v. Lucas*, 500 U.S. 145, 149, 111 S. Ct. 1743, 1746, 114 L. Ed. 2d 205 (1991) (alteration in *Lucas*) (quoting *Rock v. Arkansas*, 483 U.S. 44, 55, 107 S. Ct. 2704, 2711, 97 L. Ed. 2d 37 (1987)); *see also United States v. Elbert*, 561 F.3d 771, 776-78 (8th Cir. 2009); *United States v. Bordeaux*, 400 F.3d 548, 558-59 (8th Cir. 2005).

6

videotape to the jury but did allow them to show it to Smith, out of the presence of the jury, and then question Smith about it in the presence of the jury. In front of the jury, Smith admitted to the facts that defense counsel wished to prove through using the videotape. She admitted that she and Roy were together, that the phone rang, that she answered the phone knowing that it was a customer who had called earlier in the day. Tr. 563-66. She admitted that Roy attempted to answer the telephone but she pushed his hand away. *Id*. She testified that the customer was outside the apartment, and she gave him directions as to how to find her. *Id*. All of the relevant evidence that could have been shown by the videotape was shown through Smith's testimony. There was no error, nor any prejudice, in excluding the videotape.

**C.    The Photographs**

Also during cross-examination of Smith, defense counsel proposed to introduce into evidence ten photographs that Roy had taken of Smith. The purported purpose of the photographs was to show that Smith did not have bruises. Tr. 574-75. The photographs did not, however, show whether Smith had bruises because none of the photographs showed her entire body. In some of the photographs Smith was fully clothed, in some she was partially clothed, and in some her torso was turned away from the camera. The photographs obviously did not show whether Smith had bruises on the portions of her body that were hidden from the camera, either by Smith's clothing or by her position vis-a-vis the camera. Nor did these few photographs, taken by Roy on dates he chose, tend to prove that he never used force to coerce Smith to engage in a sex act. The photographs had no

probative value for the purpose for which they were purportedly offered.[3]  Therefore, there was no error in excluding them.

## II. PROSECUTORIAL MISCONDUCT

Roy argues that the prosecutors engaged in misconduct, primarily but not exclusively, by failing to fulfill their constitutional obligation to disclose exculpatory evidence.  First, Roy contends that the prosecutors failed to disclose a prior felony conviction that Smith had for possession of a controlled substance in Oklahoma.  Second, Roy argues that the prosecutors failed to disclose that Smith had previously provided false information in connection with a murder investigation.  Third, Roy argues that the prosecutors failed to disclose Smith's prior prostitution history and her continuing prostitution activity after Roy's arrest and incarceration.  Fourth, Roy argues that the *Brady* violation should be viewed cumulatively.

In *Brady v. Maryland*, the Supreme Court held "that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or punishment, irrespective of the good faith or bad faith of the prosecution."  373 U.S. 83, 87, 83 S. Ct. 1194, 1196-97, 10 L. Ed. 2d 215 (1963).  The Court later held that the duty to disclose exculpatory evidence applies even when the defense has made no request.  *United States v. Agurs*, 427 U.S. 97, 107, 96 S. Ct. 2392, 2399, 49 L. Ed. 2d 342 (1976).  The prosecutor's duty to disclose exculpatory evidence extends to impeachment evidence.  *United States v. Bagley*, 473 U.S. 667, 676, 105 S. Ct. 3375, 3380, 87 L. Ed. 2d 481 (1985); *Giglio v. United States*, 405 U.S. 150, 154-55, 92 S. Ct. 763, 766, 31 L. Ed. 2d 104 (1972).  Moreover, the "prosecutor has a duty to learn

---

[3] Furthermore, the photographs were cumulative.  Other photographs were in evidence.  In closing argument, defense counsel invited the jury to view them because "[y]ou don't see any bruises on her."  Tr. 762.

of any favorable evidence known to the others acting on the government's behalf in the case, including the police." *Kyles v. Whitley*, 514 U.S. 419, 437, 115 S. Ct. 1555, 1567, 131 L. Ed. 2d 490 (1995). Evidence is material "when there is a reasonable probability that, had the evidence been disclosed, the result of the proceeding would have been different." *Cone v. Bell*, 556 U.S. 449, 469-70, 129 S. Ct. 1769, 1784, 173 L. Ed. 2d 701 (2009). "The question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence." *Kyles*, 514 U.S. at 434, 115 S. Ct. at 1566. "A 'reasonable probability' of a different result is accordingly shown when the government's evidentiary suppression 'undermines confidence in the outcome of the trial.'" *Id.* (quoting *Bagley*, 473 U.S. at 678, 105 S. Ct. at 3381). The elements of a *Brady* violation are: "The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *Strickler v. Greene*, 527 U.S. 263, 281-82, 119 S. Ct. 1936, 1948, 144 L. Ed. 2d 286 (1999).

**A.     The Oklahoma Conviction**

An Assistant United States Attorney sent a letter dated May 30, 2013, to defense counsel stating that the United States was fulfilling its *Giglio* obligations to provide impeachment information regarding its witnesses. That letter failed to mention that in 2006 Smith had been convicted in Oklahoma of felony possession of a controlled substance. Even so, the prosecution disclosed that conviction. On February 8, 2013, a different Assistant United States Attorney wrote defense counsel and provided discovery, including Smith's criminal history report or "rap sheet." Document #94, Govt. Ex. 2 (filed under seal). The rap sheet disclosed Smith's Oklahoma conviction. Roy argues

that providing the rap sheet did not satisfy the prosecutors' obligations under *Brady* and its progeny because the person convicted in Oklahoma was identified as "Lakisha Trinity Smith," whereas the person identified in the Arkansas portion of the rap sheet was "Lakisha Trenika Smith," and there was a three-day discrepancy in the date of birth due to the fact that the Oklahoma portion of the rap sheet showed that Smith was born on the second day of the month, whereas the Arkansas portion showed that she was born on the fifth day of the month.[4] Despite these minor discrepancies, the rap sheet disclosed the conviction. The Oklahoma portion of the rap sheet showed Smith's sex, race, height, weight, and birth place, and all of that information corresponded to Smith's information in the Arkansas portion of her rap sheet. Discrepancies such as those here—a slightly different middle name and a 2 instead of a 5 on the birth date—are common in rap sheets, as the defense acknowledges. The prosecutors did not fail to disclose the Oklahoma conviction.[5]

**B.     False Statements to the Police in a Prior Murder Case**

Roy next argues that the prosecutors failed to disclose evidence that Smith had previously given false statements in connection with a murder investigation. That case resulted in an appeal to the Arkansas Supreme Court, which explained:

> On July 10, 2005, Jermaine Jacko was shot and killed while at the Woodbridge Apartments on John Barrow Road in Little Rock. Lakisha Smith and Lashay Elmore were at the apartment complex when the shooting occurred, and both gave statements to the police shortly after the murder. Lakisha told police that she

---

[4] The month and the year were the same in both portions of the rap sheet.

[5] Roy asserts that the Oklahoma conviction was the only conviction that could have been used for impeaching Smith, but that is inaccurate. The letter dated May 30, 2013, disclosed that Smith was twice convicted of felony theft by receiving, once on June 18, 2005, and again on September 29, 2006. Although Smith was sentenced to probation in both of the theft by receiving convictions, both crimes were felonies, which means that they were punishable by more than one year and could have been used to impeach her. Fed. R. Evid. 609.

> saw [the defendant] Beasley and two other individuals with the victim immediately prior to the shooting. She also identified Beasley as the shooter and stated that at the time of the shooting, Beasley was wearing a red t-shirt.
>
> At the bond-reduction hearing, Beasley challenged the evidence arrayed against him. While Lakisha affirmed, under oath at the hearing, Beasley's presence at the scene and how he was dressed, she said the statement she had previously made identifying him as the shooter was "a lie" and that she had only repeated to police what her friend Lashay told her to say. Lakisha now claimed at the bond reduction hearing that she never saw who shot the victim. On cross-examination, the State impeached Lakisha with the prior inconsistent statement she gave to the police. Beasley's counsel did not conduct a redirect examination of Lakisha.

*Beasley v. State*, 370 Ark. 238, 240, 258 S.W.3d 728, 729 (2007). In *Beasley*, the prosecutor attempted to subpoena Smith to trial, but his investigator was unable to locate her. The trial court permitted the prosecutor to use Smith's bond reduction testimony at trial on the ground that she was unavailable pursuant to Arkansas Rule of Evidence 804(a)(5). The Arkansas Supreme Court reversed, holding that Smith's bond reduction testimony should not have been admitted at trial. *Id.* at 247, 258 S.W.3d at 734. Here, Roy argues that Smith's false statement in the *Beasley* case could have been used to impeach her pursuant to Federal Rule of Evidence 608(b).

The prosecutors' duty of disclosure extends not only to evidence known to the prosecutor but also "any favorable evidence known to the others acting on the government's behalf in the case, including the police." *Kyles*, 514 U.S. at 437, 115 S. Ct. at 1567. In other words, "the knowledge of some of those who are part of the investigative team is imputed to prosecutors regardless of prosecutors' actual awareness." *United States v. Robinson*, 627 F.3d 941, 951 (4th Cir. 2010). Here, there is no indication that anyone working on the government's behalf in this case knew about Smith's false statement in the *Beasley* case. Roy points out that the Little Rock Police Department investigated the Beasley case and this case, but he does not argue that any of the officers working on

this case knew of Smith's involvement in the Beasley case. The transcripts that Roy has offered from the Beasley case show that a person named Detective J.C. White was responsible for the Beasley investigation. *Cf.* Documents #101-1 at 24, #101-2 at 2. The transcripts also mention a person identified as Detective Knolls. *Id.* at 468. An investigator named Mike Ricard, who was employed by the Pulaski County Prosecutor's Office, also was involved. Document #101-3 at 5. The officers in this case were Detective James Johnson, Sergeant Allen Hamby, and Detective Jennifer Hurd. Tr. 55, 108, and 172. There could be a *Brady* violation here only if the knowledge of the LRPD officers in the *Beasley* case was imputed to the United States Attorney, but "[w]e do not accept the defendant's proposal that we impute the knowledge of the State of [Arkansas] to a federal prosecutor." *United States v. Kern*, 12 F.3d 122, 126 (8th Cir. 1993); *see also Robinson*, 627 F.3d at 952 (misconduct by investigation officers, even though obviously known to the officers, was not imputed to the prosecutor); *United States v. Beers*, 189 F.3d 1297, 1304 (10th Cir. 1999) (refusing to impute knowledge from state investigators to federal prosecutors).

Assuming, however, that the prosecutors in this case were charged with knowledge of Smith's false statement in the Beasley case, that still would not mean that they violated their obligations to Roy. As the Eighth Circuit has explained:

> To prove a violation, the defendant must show that the evidence was both favorable and material, and that the government suppressed the evidence. *United States v. Barraza-Cazares*, 465 F.3d 327, 333 (8th Cir. 2006). The government has suppressed evidence when it was otherwise unavailable to the defendant, and the prosecution failed to disclose the evidence in time for the defendant to use it. *Id.* at 334. Thus, "[t]he government does not suppress evidence in violation of *Brady* by failing to disclose evidence to which the defendant had access through other channels." *United States v. Zuazo*, 243 F.3d 428, 431 (8th Cir. 2001).

*United States v. Santisteban*, 501 F.3d 873, 877 (8th Cir. 2007) (alteration in *Santisteban*); *see also United States v. Ladoucer*, 573 F.3d 628, 636 (8th Cir. 2009) (failure to produce a transcript of a witness's state-court testimony did not violate *Brady* because the transcript was equally available to both sides); *United States v. Coplen*, 565 F.3d 1094, 1097 (8th Cir. 2009) ("The government does not suppress evidence in violation of *Brady* by failing to disclose evidence to which the defendant had access through other channels."); *United States v. Willis*, 277 F.3d 1026, 1034 (8th Cir. 2002) ("Publicly available information which the defendant could have discovered through reasonable diligence cannot be the basis for a *Brady* violation."); *United States v. Albanese*, 195 F.3d 389, 393 (8th Cir. 1999) (failure to turn over a transcript of testimony from a public proceeding does not violate *Brady*); *United States v. Jones*, 160 F.3d 473, 479 (8th Cir. 1998) (there is no *Brady* violation if the defendant could have obtained the information through reasonable diligence; information that is readily available to the defendant is not *Brady* material); *United States v. Willis*, 997 F.2d 407, 412 (8th Cir. 1993) (no *Brady* violation in failing to provide a plea agreement that was a matter of public record); *Reese v. Frey*, 801 F.2d 348, 350 (8th Cir. 1986) (a warrant was not *Brady* material because it was in a court file where it was readily available).

Here, Smith's involvement in the *Beasley* case was a matter of public record, including a published opinion of the Arkansas Supreme Court. There is no *Brady* violation.[6]

---

[6] Defendant's amended motion contends that the government failed to disclose testimony by Trena Hunt in the *Beasley* case. Hunt is Lakisha Smith's aunt. She testified in this case. Roy's argument that the prosecutors' failure to disclose Hunt's testimony in *Beasley* violated *Brady* fails for the reasons stated above.

### C. Failure to Disclose Smith's Prior Prostitution History and Prostitution Activity After Roy's Arrest and Incarceration

Roy next argues that the prosecutors violated their *Brady* obligations because they failed to disclose that Smith supposedly engaged in prostitution before meeting Roy and continued to do so after Roy was arrested and incarcerated. Roy argues that the prosecutors must have known that Smith had engaged in prostitution before and after Roy's arrest and conviction because they filed a motion *in limine* to preclude the defense from offering such evidence. But that hardly follows. The fact that the prosecutors anticipated that the defendant in a sex-crime case might attempt to offer evidence that the victim had engaged in sexual misconduct hardly indicates that they knew or believed that such evidence existed. As to Roy's allegation that Smith engaged in prostitution activity after he was arrested and incarcerated, at trial Roy offered advertisements from Backpage.com that purported to advertise Smith after Roy was incarcerated. There is no evidence, however, that Smith placed those advertisements, nor is there evidence that the prosecutors knew of them. Roy obviously knew of those advertisements because he offered them into evidence, so they were not suppressed. Finally, the Court excluded all of that evidence pursuant to Rule 412, so none of it is material.

### D. Cumulative *Brady* Violations

Roy argues that the Court should consider the *Brady* violations as cumulative, but there were no *Brady* violations. Nor does the absence of the evidence allegedly suppressed, viewed cumulatively, undermine confidence in the outcome of the trial. The allegedly suppressed evidence boils down to a six- or seven-year-old drug conviction and a false statement in an unrelated matter nearly eight years before the trial in this case. While this information, had it been available, could

have been used to impeach Smith, there is no reasonable probability that the outcome of the trial would have been different.

### E. Other Prosecutorial Misconduct

One of the witnesses for the government was a minor who was engaged in prostitution when she met Roy. Roy attempted, unsuccessfully, to recruit her to engage in that same occupation under his auspices. Roy moved *in limine* to exclude any evidence that she was a minor, and the Court granted that motion. She was asked on direct examination where she was living, and she said "Alexander." She then was asked if she was incarcerated, and she answered, "Yes." Tr. 320. Roy argues that this information disclosed to the jury that she was a minor because the State of Arkansas maintains a juvenile detention center near Alexander. "In order for a violation of an order granting an in limine motion to serve as a basis for a new trial, the order must be specific in its prohibition and the violation must be clear. Further, a new trial may follow only where the violation has prejudiced the parties or denied them a fair trial." *Pullman v. Land O'Lakes, Inc.*, 262 F.3d 759, 762 (8th Cir. 2001) (internal citation omitted). Here, the question by the prosecutor was not intended to violate the Court's *in limine* order, nor is there reason to believe that the jury inferred that the witness was a minor. This testimony did not prejudice Roy in any way.

### F. Smith's Arrest Following Cross-Examination

After Smith testified during the government's case, Roy requested that she be available to testify in the event that he decided to call her in his case. She was, however, booked into the Pulaski County Jail. Nevertheless, Roy did not attempt to call her back during the presentation of his case. Had he done so, and if she had been in the Pulaski County Jail, the Court could have arranged for her to be delivered to Court to testify. There is no prosecutorial misconduct nor any prejudice to Roy.

### G. Perceived Improper Conduct With a Witness

During a recess while Smith was testifying, an Assistant United States Attorney accompanied Smith to the restroom. One of the defense lawyers followed them. There is no evidence, however, of any improper conduct during this recess. It is surely not improper for a lawyer to accompany a witness to the restroom,[7] which, so far as the evidence shows, is all that happened. Defense counsel saw the Assistant United States Attorney and Smith together but did not question Smith about their conversation after she returned to the stand. Roy requests an evidentiary hearing on this issue, but he had an opportunity to question Smith about her conversation with the prosecutor when she resumed the stand, and he did not do so. Nothing here warrants an evidentiary hearing or a new trial.

### III. NEWLY-DISCOVERED EVIDENCE

In his amended motion, Roy also claims that there is newly discovered evidence that justifies a new trial. That newly discovered evidence consists of a Facebook public profile purportedly belonging to Lakisha Smith, in which she identifies herself as Love K Smith. The profile was created on June 7, 2013, shortly after the trial concluded. Arguably, statements on that profile indicate Smith did not want to take a federal charge. Smith testified at trial, however, that she did not want to take a charge, Tr. 469, so this is hardly new information. Moreover, there is no evidence that Smith created this profile, nor is there anything in the profile that would change the outcome of this case.

---

[7] The government's response points out that several spectators were Roy's friends or members of his family, and they were in the hall during the recess. Accompanying a witness to the restroom in this circumstance gives rise to no inference of misconduct.

## CONCLUSION

Jermaine Lamon Roy was afforded a fair trial. No admissible evidence was excluded, nor was there any prosecutorial misconduct. The interest of justice does not require a new trial. Roy's motion and amended motion for new trial are denied. Documents #88 and #101.

IT IS SO ORDERED this 15th day of October, 2013.

*[signature: J. Leon Holmes]*

J. LEON HOLMES
UNITED STATES DISTRICT JUDGE